IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GREGORY BARNETT GRIGGS | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-08-CV-2137-B-BD |
| RICK THALER, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Gregory Barnett Griggs, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A jury convicted petitioner of aggravated sexual assault of an elderly person. Punishment, enhanced by a prior felony conviction, was assessed at life imprisonment. His conviction was initially reversed on direct appeal. *Griggs v. State*, 167 S.W.3d 74 (Tex. App.--Waco 2005). However, the Texas Court of Criminal Appeals granted a petition for discretionary review and reinstated the conviction. *Griggs v. State*, 213 S.W.3d 923 (Tex. Crim. App. 2007), *cert. denied*, 128 S.Ct. 153 (2007). Petitioner also filed an application for state post-conviction relief. The application was denied without written order on the findings of the trial court. *Ex parte Griggs*, WR-69,649-01, 2008 WL 4532001 (Tex. Crim. App. Oct. 8, 2008). Petitioner then filed this action in federal district court.

II.

In his sole ground for relief, petitioner contends that he received ineffective assistance of counsel because his attorney failed to timely object to the improper admission of extraneous offense evidence.[1]

A.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067.

Where, as here, a state court has already rejected a claim of ineffective assistance of counsel, a federal court may grant habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1); *see also Threadgill v. Quarterman*, No. 3-05-CV-2217-D, 2009 WL 2448499 at *5 (N.D. Tex. Aug. 10, 2009) (citing cases), *appeal filed*, Sept. 8, 2009 (5th Cir.) (No. 09-70024) (holding that both prongs

---

[1] Petitioner alleged other instances of ineffective assistance of counsel in a *pro se* writ filed on December 3, 2008. After reviewing the pleadings and the state court record, the court determined that at least one of petitioner's claims warranted "closer examination" and should be re-briefed with the assistance of counsel. *See* Order, 2/2/10 at 7-8. The court appointed the Federal Public Defender to represent petitioner, and directed counsel to file an amended pleading that "contain[s] all grounds upon which petitioner challenges his state conviction[.]" *Id.* at 8. The only allegation of ineffective assistance of counsel raised by petitioner in his amended writ filed on April 30, 2010, involves the failure to timely object to the improper admission of extraneous offense evidence. The court therefore considers only that claim.

of the *Strickland* test present a mixed question of law and fact that is reviewed under section 2254(d)(1)). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000). A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523; *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). Factual determinations made by the state court are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Threadgill*, 2009 WL 2448499 at *5 (citing cases). This presumption applies not only to explicit findings of fact, but "it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Threadgill*, 2009 WL 2448499 at *5, *quoting Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001), *cert. denied*, 123 S.Ct. 106 (2002).

On federal habeas review, the district court reviews "only the ultimate decision of the state court, and not the specific contents of its reasoning or opinion." *Blanton v. Quarterman*, 543 F.3d 230, 236 (5th Cir. 2008), *cert. denied*, 129 S.Ct. 2383 (2009). When the Texas Court of Criminal Appeals denies post-conviction relief without written order on findings of the trial court, the federal habeas court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application

of that law." *Threadgill*, 2009 WL 2448499 at *5, *quoting Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1156 (2004).

B.

Petitioner criticizes his attorney for failing to contemporaneously object when two witnesses, Richard Gravitt and Jason Grant, testified that he had admitted raping other elderly women. Prior to trial, defense counsel filed a standard motion in limine seeking to exclude any kind of extraneous offense evidence. (*See* St. App. Tr. at 139-40). The issue came up during trial when the prosecutor asked Grant, a Corsicana police officer, how petitioner became a suspect in the case. (SF-VIII at 223). After a brief hearing outside the presence of the jury, the trial court ruled:

> I think I want to exclude testimony about other burglaries and sexual assaults. I don't want -- I don't want the witness to refer to other crimes from which the jury might infer that this--this defendant is a suspect in those alleged offenses.

(*Id.* at 230). Grant finished his testimony without mentioning any extraneous sexual assaults allegedly committed by petitioner. The judge repeated his warning before Gravitt and Gary Spencer, both of whom shared a cell with petitioner at the Navarro County Jail, testified for the state:

> The -- now with respect to testimony of Spencer and Gravitt, I want to make sure that they're not going to testify to any acts -- criminal acts or--or offenses which are not subject to these proceedings, and they are not law enforcement witnesses, and I know from experience that sometimes they don't understand the perimeters of their testimony. I presume that State's counsel has cautioned them with respect to that aspect of the case?

(SF-X at 17-18). The prosecutor assured the judge that the witnesses had been so instructed and would be reminded to follow the court's ruling. (*Id.* at 18). The judge then added:

> Well, ... I'm concerned about other testimony I've previously heard about how there was an admission of three separate sexual assaults and I don't want to -- I want to make sure that we don't get into extraneous matters that could result in reversal of this case should the jury return a verdict of guilt.

(*Id.*).

Despite this ruling, Gravitt twice mentioned that petitioner had admitted raping other elderly women. When asked by the prosecutor to "tell the jury what Mr. Griggs told you[,]" Gravitt responded:

> A. *That he had raped some older women,* and it went on quite a bit farther than that, you know, that--
>
> Q. [BY PROSECUTOR]: Did he make a statement to you that he raped an old woman?
>
> A. Yes, sir.
>
> \* \* \* \*
>
> Q. Did he or did he not admit to raping an elderly lady to you?
>
> A. Yes, sir.
>
> Q. What did he say with regards to just that -- that point?
>
> A. Just as I said in the statement, *that he had raped older women--*
>
> Q. No, no. I said--
>
> A. An older lady that they -- they was trying to catch him and they didn't have nothing on him, he had it beat, I mean, and it went on and on, and you really got tired of hearing it.

(*Id.* at 57, 60-61) (emphases added). Defense counsel did not object to this testimony, ask for a limiting instruction, or request a mistrial at that time. After Gravitt testified, the state recalled Grant, who was asked a series of questions about his discussions with Gravitt:

> Q. [BY PROSECUTOR]: What did Mr. Gravitt tell you in respect to the investigation of the rape of [the victim]?
>
> A. He told me that he was in the cell with Greg Griggs and *Greg had told him that he had raped three elderly--*
>
> Q. Hold on. Mr. -- Mr. Grant, with specifics as to Mr. Griggs only, what did Mr. Gravitt tell you?
>
> A. *That Griggs told him that he had raped three elderly women in his neighborhood* and that he -- he had told him about a towel and a screwdriver and that he was paranoid that we were trying to get his DNA so we could catch him.

(*Id.* at 80-81) (emphases added). Once again, defense counsel did not object, ask for a limiting instruction, or request a mistrial. Rather, it was the judge who expressed concern about the prejudicial impact of this extraneous offense evidence. Before Spencer took the stand, the judge make the following remarks outside the presence of the jury:

> I've done my best to avoid the inadvertent admission of extraneous offenses in this case. This happened with the last two witnesses -- two witnesses. Mr. Gravitt referred to a statement made by the defendant that he had raped women. Jason Grant made reference to the statement of Gravitt that he had raped three women.
>
> I'm not -- I'm not sure what action I should take at this point. I think -- I think the conduct of the witnesses has jeopardized this case to a large extent. I am -- I am willing to take whatever mitigating action that counsel believes is necessary. I can instruct the jury that they're not to -- they're not to consider any evidence of extraneous acts or offenses other than the particular offense that is the subject of this case. If defense counsel thinks that such an instruction would unduly bring such matters to the attention of the -- of the finders of fact, I'll do that [sic]. But I'm looking for some instruction from counsel at this time because in my opinion the Court's rulings and instructions have been violated at this point.

(*Id.* at 92-93). In response to the court's request, the prosecutor suggested an appropriate limiting instruction. (*Id.* at 95). Defense counsel asked for a mistrial. (*Id.*). When the judge refused to grant a mistrial, defense counsel requested both a limiting instruction and an instruction to disregard. (*Id.*

at 96). The trial court proceeded to instruct the jury that "[y]ou shall not consider any testimony or evidence of alleged crimes or acts other than those which may relate to the alleged assault upon [the victim]." (*Id.* at 97). A similar instruction was contained in the jury charge. (*See* St. App. Tr. at 151).[2] No further mention of extraneous offenses was made by the prosecutor, defense counsel, or any of the witnesses.

On direct appeal, a divided court of appeals held that the trial court erred in denying a mistrial. Although defense counsel did not timely object to the testimony of Gravitt and Grant, the majority held that such an objection was not necessary because "an objection after an event occurs cannot fulfill the purpose of the objection, which is to prevent the occurrence of the event." *Griggs*, 167 S.W.3d at 78. Because counsel later requested a limiting instruction and moved for a mistrial, the majority determined that the issue was preserved for appellate review. *Id.* The majority went on to explain why the trial court should have granted a mistrial:

> Regardless of whether the prosecutor's questions were intended to elicit the inadmissible testimony, the focus of our analysis is on the prejudice to the defendant. The testimony was not only heard by the jury but was repeated by two State's witnesses, one of whom was the investigating officer in the case. Furthermore, the testimony was given in violation of the court's earlier ruling. Afterward, the trial judge himself expressed concern that the testimony of the witnesses had jeopardized the trial. The impression produced in the minds of the jurors--that Griggs might be a serial rapist of elderly women--was highly prejudicial and could not be cured by an instruction to disregard. Given the lack of direct identification of the perpetrator of the crime charged, and because the prosecution relied heavily upon Grigg's alleged admissions to his fellow inmates, the danger that the

---

[2] The court instructed the jury:

> [I]f there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose.

(St. App. Tr. at 151).

> jury may have been swayed by the inadmissible testimony was particularly high.

*Id.* at 79. One judge dissented on the ground that defense counsel waived any error by not timely objecting to evidence of other sexual assaults. *Id.* at 85 (Gray, C.J., dissenting). The dissent also noted that a limiting instruction could have cured the prejudicial effect of this extraneous offense evidence, "particularly . . . if the request and instruction had been made after the first potentially objectionable comment, or even the second." *Id.* The Texas Court of Criminal Appeals granted a petition for discretionary review and reversed the court of appeals. A majority of the court held that defense counsel failed to preserve error by not asking for a mistrial until after both Gravitt and Grant had concluded their testimony. *Griggs*, 213 S.W.3d at 927. Two judges dissented. On the issue of whether a mistrial should have been granted, one dissenting judge observed that "the witnesses' testimony was so bad that the trial judge took it upon himself to excuse the jury and inform the parties that 'the conduct of the witnesses has jeopardized this case to a large extent.'" *Id.* at 928 (Meyers, J., dissenting).

Petitioner raised this issue again on state collateral review as part of an ineffective assistance of counsel claim. In an affidavit submitted to the state habeas court, defense counsel explained his reasons for not objecting to the testimony of Gravitt and Grant:

> I was aware that there were allegations that Mr. Griggs was a serial rapist who preyed on elderly women. I filed and obtained a favorable ruling on a Motion In Limine designed to preclude introduction of such matters until the Court had ruled on admissibility. In connection with this Motion, the trial Court gave specific instructions to the prosecutor cautioning that the witnesses be briefed on this ruling. One, or perhaps two witnesses made a non-responsive reference to unindicted conduct which violated the Court's ruling. Based on previous trial practice, I believed that the Court would give a prompt instructions [sic] to disregard, which would likely cure any error, however I made a conscious decision not to object and draw additional attention to the briefly-mentioned alleged conduct. The

> Court shortly thereafter gave curative instructions, which would certainly have been given in response to any objection.

*Ex parte Griggs*, WR-69,649-01, Supp. Tr. at 6. The state habeas court accepted this explanation and found that counsel's conduct was an "appropriate exercise of trial strategy given the nature of the limine violation." *Id.*, Supp. Tr. at 5. The state court also determined that there was nothing in the record to indicate that "an impartial verdict was not reached or that the verdict reached would be reversed on appeal due to an obvious procedural error." *Id.*, Tr. at 160.

1.

The first inquiry under *Strickland* is whether counsel's failure to contemporaneously object to testimony linking petitioner to the rapes of other elderly women was an "appropriate exercise of trial strategy." It is difficult to envision how an objection by defense counsel, which could have been made outside the presence of the jury, would have drawn additional attention to this potentially damaging evidence. Both Gravitt and Grant referred to other rapes not once, but twice, during their testimony. (*See* SF-X at 57, 60-61, 80-81). Grant even elaborated that petitioner admitted to "rap[ing] three elderly women in his neighborhood[.]" (*Id.* at 81). Yet counsel remained silent. As the Texas Court of Criminal Appeals observed:

> [W]hen Gravitt first testified concerning the alleged extraneous offenses, defense counsel could have (1) asked to approach the bench, (2) asked the trial court to excuse the jury from the courtroom, (3) objected to Gravitt's testimony concerning the alleged extraneous offenses, (4) asked the trial court to instruct Gravitt and all future witnesses not to mention any alleged extraneous offenses, (5) asked the trial court to instruct the jury to disregard Gravitt's testimony concerning the alleged extraneous offenses, and (6) moved for a mistrial if he believed that no instruction could be effective. Defense counsel did none of these things.

*Griggs*, 213 S.W.3d at 927. It was not until the trial judge *sua sponte* questioned the prejudicial impact of this extraneous offense evidence that defense counsel finally asked for a mistrial or,

alternatively, a limiting instruction. (*See* SF-X at 95-96). This is not a situation where counsel reasonably believed that Texas law permitted the state to elicit evidence linking petitioner to other sexual assaults. *Cf. Givens v. Cockrell*, 265 F.3d 306, 309 (5th Cir. 2001) (failure to object to extraneous offense evidence was not deficient performance because Texas law was unsettled and counsel could have reasonably believed that the law permitted such evidence). In fact, the trial judge repeatedly warned the prosecutor not to refer to other crimes involving petitioner, and to instruct his witnesses accordingly. (*See* SF-X at 17-18). Here, counsel made a "conscious decision not to object and draw additional attention to the briefly-mentioned alleged conduct[,]" believing the trial judge would take it upon himself to instruct the jury to disregard the evidence. *See Ex parte Griggs*, WR-69,649-01, Supp. Tr. at 6. That explanation strains credulity, particularly in view of counsel's motion in limine and prior warnings given by the trial court to the prosecutor not to elicit evidence of other crimes allegedly committed by petitioner. Despite these warnings, two witnesses testified that petitioner admitted raping other elderly women. While mention of these other sexual assaults may have been brief, the trial judge was concerned that the impact of this evidence on the jury was such that the case had been "jeopardized . . . to a large extent." (*See* SF-X at 92-93). Only after the judge invited the attorneys to suggest an appropriate remedial course of action did defense counsel ask for a limiting instruction. And that was *after* the court denied his request for a mistrial. If, as counsel represents, he made a conscious decision not to object to evidence linking his client to other sexual assaults, that decision fell below an objective standard of reasonable professional conduct. More likely, counsel did not realize that a timely objection, a request for a limiting instruction, and a motion for mistrial were necessary to preserve error for appeal. Under either scenario, the court has little difficulty concluding that the performance of counsel was constitutionally deficient.

The court next considers whether petitioner was prejudiced by the substandard performance of his attorney. "To demonstrate prejudice, a petitioner 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009), *quoting Strickland*, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, *quoting Strickland*, 104 S.Ct. at 2068. The ultimate focus of the prejudice inquiry is on "the fundamental fairness of the proceeding whose result is being challenged." *Virgil v. Dretke*, 446 F.3d 598, 612 (5th Cir. 2006), *quoting Strickland*, 104 S.Ct. at 2069. The court looks to "ferret[] out 'unreliable' results caused by 'a breakdown in the adversarial process that our system counts on to produce just results.'" *Id.*, *quoting Strickland*, 104 S.Ct. at 2069. While the test for prejudice is not simply whether there was sufficient evidence to convict the petitioner, "the strength of the incriminating evidence informs the determination of prejudice." *Bustamante v. Quarterman*, 284 Fed.Appx. 183, 188, 2008 WL 2645676 at *5 (5th Cir. Jul. 7, 2008), *citing Williams*, 120 S.Ct. at 1515.

Judged against this standard, the court is unable to conclude that the outcome of petitioner's trial would have been different had counsel contemporaneously objected to evidence of other sexual assaults. Even without this extraneous offense evidence, the jury likely would have convicted petitioner of aggravated sexual assault of an elderly person. At trial, the 78 year-old victim testified that she was sexually assaulted in her home by an unknown assailant on the evening of May 22, 2001. (*See* SF-VIII at 23, 27-32). After the assault, the assailant broke down a door outside the kitchen hallway as he fled from the victim's home. (*Id.* at 33-34). Jason Barto and Jason Grant, two Corsicana police officers who were called to the crime scene, found a glove lying on top of paint

chips, broken glass, and broken wood from the door that had been destroyed. (*Id.* at 109-110, 184-85). The door appeared to have been broken outward from inside the hallway. (*Id.* at 117, 186). Because the glove was found on top of the debris, Grant concluded it must have landed there after the door was broken. (*Id.* at 186). Barto testified that he observed fresh footprints in the backyard. (*Id.* at 143). A window in an upstairs bedroom was broken out, indicating a likely entry point. (*Id.* at 115-16, 190-91, 221). Grant was not able to lift any fingerprints from inside the home, suggesting that the assailant wore gloves. (*Id.* at 219). Other than the glove found at the crime scene, the police did not recover any physical evidence that furthered their investigation. (*Id.* at 198, 201, 223).

For nearly a year, the police were unable to develop any credible leads in the case. (*Id.* at 234). Then, in April 2002, Richard Gravitt told police that petitioner admitted raping an elderly woman in his neighborhood. (*Id.* at 234; SF-X at 56-57, 80-81). Subsequent investigation revealed that petitioner lived approximately one-half mile from the victim at the time of the assault. (*See* SF-X at 81). Based on this information, the police obtained a search warrant to collect blood and hair samples from petitioner. (*See* SF-VIII at 243). Patricia Retzlaff, a criminalist from the DPS Crime Laboratory, compared the DNA from cells found inside the glove left at the crime scene with the blood drawn from petitioner, and concluded that there was a DNA match. (*See* SF-IX at 115, 131, 134). According to Retzlaff, the chances of selecting a person at random with the same DNA makeup as the cells found inside the glove was "one in 17 trillion, 820 billion for Caucasians; one in 3 trillion, 743 billion for blacks; and one in 57 trillion, 270 billion for Hispanics." (*Id.* at 134).[3] Jaime King, a forensic analyst hired by the defense, confirmed the DNA match. (*See id.* at 156, 159-61). King testified that the probability the DNA was from someone other than petitioner was one

---

[3] Petitioner is African-American. (*See* SF-VIII at 80-82).

in 9.8 quintillion in the black population, one in 78.7 quintillion among the Caucasian population, and one in 556 quintillion in the Hispanic population. (*Id.* at 160).

Gravitt and Gary Spencer, another Navarro County Jail inmate, testified for the state at trial. Gravitt said that petitioner privately told him that he had raped an old woman "around where he lived," and bragged several times that the police had no evidence against him. (*See* SF-X at 55, 57-58, 60-61, 62). Spencer testified that petitioner had shown him an indictment for aggravated sexual assault of an elderly person. (*Id.* at 100, 102). When Spencer asked petitioner if he had committed the offense alleged in the indictment, petitioner "grinned and shook his head yes." (*Id.* at 102). Six witnesses testified for the defense, including five prisoners who had been housed at various times with petitioner or Gravitt in the Navarro County Jail. (*Id.* at 172-73, 177, 180, 185, 191). Wade Tompkins and Raymond Bridger said that a jailer attempted to solicit information from them regarding petitioner's involvement in the alleged crime. (*See id.* at 173, 177). Marcello Gibbs testified that he heard Gravitt say, in reference to petitioner's case, that he would "give a name up for a whole bunch of time." (*Id.* at 181). Marcus Hervey and Kevin Milazzo also cast doubt on Gravitt's motives for testifying against petitioner. Hervey said that Gravitt and petitioner were never friends and once got into a fight. (*Id.* at 185-86). Milazzo testified that Gravitt wanted "to take [petitioner] down because he knows what he done [sic], stuff like that, and he was going to try to find out evidence against him[.]" (*Id.* at 194).

The strength of this evidence, including DNA test results that all but conclusively placed petitioner at the crime scene on the night of the assault, was more than enough to convince the jury of petitioner's guilt. Petitioner lived approximately one-half mile from the victim, bragged to one of his cellmates that he had raped an elderly woman in his neighborhood, and intimated to another cellmate that he committed the offense alleged in the indictment. Although counsel should have

objected to clearly inadmissible evidence linking petitioner to other sexual assaults, the court cannot say that the magnitude of harm caused by counsel's deficient performance was so prejudicial that it undermines confidence in the outcome of the trial. *See Strickland*, 104 S.Ct. at 2068. To mitigate any harm, the trial court promptly instructed the jury not to "consider any testimony or evidence of alleged crimes or acts other than those which may relate to the alleged assault upon [the victim]." (SF-X at 97). At the conclusion of the trial, the court again instructed the jury not to consider "any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case[.]" (St. App. Tr. at 151). Juries are presumed to follow the court's instructions, and there is no indication that the jury in petitioner's case did not. *Robles v. Thaler*, 344 Fed.Appx. 60, 64, 2009 WL 2903664 at *4 (5th Cir. Sept. 8, 2009), *quoting Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987); *see also Harris v. Thaler*, No. H-08-3414, 2010 WL 1427270 at *3 (S.D. Tex. Apr. 8, 2010) (habeas petitioner convicted of aggravated robbery failed to show that state court ruling denying his motion for mistrial was contrary to clearly established federal law or objectively unreasonable, where jury was instructed by the trial court to disregard police officer's testimony linking him to another robbery). *But see Ard v. Thaler*, No. 3-07-CV-1127-D, 2009 WL 4249133 at *10 (N.D. Tex. Nov. 24, 2009) (limiting instruction did not cure prejudice where it all but invited the jury to consider a prior aggravated assault conviction in determining the central issue in a murder case -- whether the shooting was intentional or accidental).

The court recognizes that extraneous offense evidence, particularly evidence that involves conduct similar to the offense for which the defendant is charged, may be highly prejudicial. *See, e.g. Lyons v. McCotter*, 770 F.2d 529, 534 (5th Cir. 1985), *cert. denied*, 106 S.Ct. 833 (1986) (characterizing evidence of prior convictions that were similar to the charged offense as "highly

prejudicial and incriminating"); *United States v. Preston*, 608 F.2d 626, 639 & n.18 (5th Cir. 1979), *cert. denied*, 100 S.Ct. 2162 (1980) (recognizing danger that a jury presented with extraneous offense evidence will think "once a criminal, always a criminal," and that "[t]he risk of prejudice may be particularly high where [ ] the former crime is of the same nature as the one for which defendant is being tried"); *Nero v. Blackburn*, 597 F.2d 991, 994 (5th Cir. 1979) ("We can hardly imagine anything more prejudicial to Nero than allowing the jury in his armed robbery case to hear the prosecutor's comments that Nero had been convicted twice before of burglary and once on drug charges."). Were this a closer case, the jury instructions might not be sufficient to mitigate the prejudicial effect of evidence linking petitioner to other sexual assaults. However, the two limiting instructions given by the trial judge, combined with the strength of the evidence against petitioner, convince the court that petitioner was not prejudiced in the *Strickland* sense -- that is, petitioner has not shown that there is a reasonable probability the outcome of his trial would have been different had counsel timely objected to this improper extraneous offense evidence. This ground for relief should be overruled.[4]

## RECOMMENDATION

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file

---

[4] Petitioner, though his attorney, argues that "every single state appellate court judge which has examined the claim of prejudice have all concluded that the testimony was highly prejudicial and could not be cured by an objection or jury instruction[.]" (*See* Am. Hab. Pet. at 20). It is true that a divided Texas intermediate appeals court, as well as a dissenting Texas Court of Criminal Appeals judge, opined that the admission of this extraneous offense evidence was highly prejudicial and could not be cured by an instruction. *See Griggs*, 167 S.W.3d at 78; *Griggs*, 213 S.W.3d at 928-29 (Meyers, J., dissenting). However, neither opinion is entitled to deference under the AEDPA. Instead, this court must defer to the finding of the state habeas court, which was adopted by the Texas Court of Criminal Appeals, that "[t]here is nothing in the record to indicate . . . that an impartial verdict was not reached or that the verdict reached would be reversed on appeal due to an obvious procedural error." *Ex parte Griggs*, WR-69,649-01, Tr. at 160.

specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 11, 2011.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE